# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## COMPLAINT FORM

DEC 15 2023 PM2:49
FILED-USDC-CT-HARTFORD

Aubrey W Rose Jr

**Full name(s) of Plaintiff(s)**
(Do not use *et al.*)

Case No. _____
(To be supplied by the Court)

v.

United States of America

**Full names of Defendant(s)**
(Do not use *et al.*)

## A. PARTIES

1. ___Aubrey W. Rose Jr_____ is a citizen of ___Connecticut_____ who
    (Plaintiff)                                                    (State)
presently resides at _184 Adelaide St Hartford CT_____.
                    (mailing address)

2. Defendant ___United States of America_____ is a citizen of _____
            (name of first defendant)                              (State)
whose address is_____.

3. Defendant _____ is a citizen of _____
   (name of second defendant)                              (State)

whose address is _____.

(If more space is needed to furnish the above information for additional defendants, continue on a blank sheet which you should label "A. PARTIES." Be sure to include each defendant's identity and complete address.)

## B. JURISDICTION

The jurisdiction of this court is invoked pursuant to: (list statute(s))

28 U.S.C. § 2401(b), 28 U.S.C. § 2675 and by 28 CFR § 14.2by 28 U.S.C. § 2401(b).(3).

28 U.S.C. § 1391(e)(2) & (3). 2

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.

1. This is a civil action for damages founded upon this Court's jurisdiction under the Federal Tort Claims Act to compensate the plaintiff for the harm he has suffered, and will continue to suffer, by reason of the criminal negligence of the defendant and its agents, servants and employees.

2. Mr. Rose has been trying for the last 2 years to get help via the HUDVASH program. After being denied twice Mr. Rose did some research and found that the program was not being implented correctly.  For the last two years Mr. Rose  faced harassment, medical abuse, mental abuse, defamation of character  and reprisal tatics for just trying to get the care he is allowed.

2

## D. CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges, or immunities or my rights under a federal statute have been violated and that the following facts form the basis of my allegations: (If more space is needed to explain any allegation or to list additional supporting facts, continue on a blank sheet which you should label "D. CAUSE OF ACTION.")

**Claim I:** VA ignored all complaints by Mr. Rose and labled  him wrongfully erractic and
_____

dangerous and were in violation of the McKinney-Vento(HEARTH) Homeless Act sec.103 42 usc 11302
_____

#3
_____

Supporting Facts: (Include all facts you consider important, including names of persons involved, places, and dates.  Describe exactly how each defendant is involved.  State the facts clearly in your own words without citing legal authority or argument.)

The VA explanation for denying me  first explanation.
The HUD VASH program is a collaboration between Veterans' Affairs (VA) and the Department of Housing and Urban Development (HUD). The program's regulations provide that HUD has the homelessness.ultimate authority over governance and issuance of housing vouchers. Based on previous discussions, it is our current understanding that you reside in a border/rooming house. This does not meet HUD's definition of homeless is what they say.  SEC. 103. [42 USC 11302]. GENERAL DEFINITION OF HOMELESS INDIVIDUAL.  line 3  states that an individual or family living in a supervised publicly or privately operated shelter
designated to provide temporary living arrangements (including hotels and motels paid for by
Federal, State, or local government programs for low-income individuals or by charitable
organizations, congregate shelters, and transitional housing);.  I believe a rooming house falls under those guidelines.  I will also provide all of my tort proceedings with these filing as my proof in these matters

**Claim II:** VA violated Part 5 (Section 8) Income Inclusions and Exclusions 24 CFR 5.609(b)(c)
_____

#16 u, v, by using my income as a barrier.  The VA committed harassment, medical and mental
_____

abuse, defamation of character and reprisal tatics by issuing an erroneous Behavioral Flag.
_____

Supporting Facts:

3

I have attached to these proceedings behavioral flags that were given to me this year and the appeals and responses I got back from the VA which at no point cite any instances that would provoke such actions. They came to a decision without pointing any instances of disorderly and dangerous behavior. These labels have caused great harm to myself and my character and health. The VA is also in violation of art 5 (Section 8) Income Inclusions and Exclusions 24 CFR 5.609(b) and (c) #16 u and v. The VA continuously denies me care due to the fact they say I make to much money and therefor do not qualify. 16 V states : Compensation received by or on behalf of a veteran for service-connected disability,
death, dependency, or indemnity compensation as provided by an amendment by the
Indian Veterans Housing Opportunity Act of 2010 (Pub. L. 111-269; 25 U.S.C. 4103(9)). All of my compensation is from having a service-connected disability. Provided will be payment verifications to assure the  validity of my claims.

## E. REQUEST FOR RELIEF

WHEREFORE, plaintiff demands: (state the relief you seek)

1. Public acknowledgment of their wrong doings and the defamation of my name and character and that all criminal parties be punished according to the law.

2. Seeking damages of 100 million dollars.  All available means were used to silence me and discredit me causing severe physical, mental and emotional trauma.  The gross criminal  negligence on all levels is reprehensible and  no  amount of money will fix what happened to Mr. Rose but hopefully the amount of money paid out will be a reminder to the govt to always govern itself better and hopefully the money will help ease Mr. Rose's trauma.

## F. JURY DEMAND

Do you wish to have a jury trial?  Yes         No

_____    _____
Original signature of attorney (if any)        **Plaintiff's Original Signature**

                                               _Aubrey W Rose Jr._
_____
Printed Name                                   Printed Name


( )                                            (80) 965-7354    184 Adelaide St.
Attorney's full address and telephone          Plaintiff's full address and telephone
                                               Hartford Ct 06114

Email address if available                     Email address if available
                                               aubrey.Rose1980@gmail.com


## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ___Hartford Ct___ on ___12/15/2023___.
                    (location)            (date)

                                               _____
                                               **Plaintiff's Original Signature**


(Rev.3/29/16)

5

**17088**    **Federal Register** / Vol. 77, No. 57 / Friday, March 23, 2012 / Notices

·PHAs are required to maintain records that allow for the easy identification of families receiving HUD–VASH vouchers. PHAs must identify these families in the Public and Indian Housing Information Center (PIC). This recordkeeping will help ensure, in accordance with appropriations renewal language, that HUD–VASH vouchers that are in use will remain available for homeless veterans upon turnover.

The alternative requirements established in this notice apply to all PHAs that administer HUD–VASH vouchers, including those that have not received an allocation of HUD–VASH vouchers, but which administer them as a receiving PHA under the portability feature of the HCV program.

This notice does not direct, provide for assistance or loan or mortgage insurance for, or otherwise govern or regulate, real property acquisition, disposition, leasing, rehabilitation, alteration, demolition or new construction, or establish, revise, or provide for standards for construction or construction materials, manufactured housing, or occupancy. Accordingly, under 24 CFR 50.19(c)(1), this notice is categorically excluded from environmental review under the National Environmental Policy Act of 1969 (42 U.S.C. 4321).

*a. Family Eligibility and Selection*

HUD–VASH-eligible families are homeless veterans and their families. The appropriations acts funding the HUD–VASH program authorize the HUD Secretary, in consultation with the VA Secretary, to waive, or specify alternative requirements for, any provision of any statute or regulation that the HUD Secretary administers in connection with the use of funds made upon a finding by the HUD Secretary that such waivers or alternatives are necessary for the effective administration and delivery of voucher assistance (except for requirements related to fair housing, nondiscrimination, labor standards, and the environment). The December 17, 2007, Explanatory Statement for the 2008 Appropriation Act states, ''The Appropriations Committees expect that these vouchers will be made available to all homeless veterans, including recently returning veterans'' (153 Cong. Rec. H16514 (daily ed., Dec. 17, 2007)).

Section 8(o)(19) of the 1937 Act, which requires homeless veterans to have chronic mental illnesses or chronic substance-use disorders with required treatment of these disorders, as a condition of receipt of HUD–VASH assistance, is waived.

VA HUD–VASH case managers will refer HUD–VASH-eligible families to the PHA for the issuance of vouchers. The PHA must accept referrals from their VA partner. Written documentation of these referrals must be maintained in the tenant file by the PHA. Therefore, the PHA will not have the authority to maintain a waiting list or apply local preferences for HUD–VASH vouchers. Accordingly, section 8(o)(6)(A) of the 1937 Act (42 U.S.C. 1437f(o)(6)(A)), in regard to preferences, is waived to provide for the effective administration of the program. In addition, 24 CFR 982.202, 982.204, and 982.207, relating to applicant selection from the waiting list and local preferences, are also waived. Sections 982.203, 982.205, and 982.206 regarding special admissions, cross-listing of the waiting list, and opening and closing the waiting list do not apply to the HUD–VASH program.

VA HUD–VASH case managers will screen all families in accordance with VA screening criteria. By agreeing to administer the HUD–VASH program, the PHA is relinquishing its authority to determine the eligibility of families in accordance with regular HCV program rules and PHA policies. Specifically, under the HUD–VASH program, PHAs will not have the authority to screen any potentially eligible family members or deny assistance for any grounds permitted under 24 CFR 982.552 (broad denial for violations of HCV program requirements) and 982.553 (specific denial for criminals and alcohol abusers), with one exception: PHAs will still be required to prohibit admission if any member of the household is subject to a lifetime registration requirement under a state sex offender registration program. However, unless the family member that is subject to lifetime registration under a state sex offender registration program is the homeless veteran (which would result in denial of admission for the family), the remaining family members may be served if the family agrees to remove the sex offender from its family composition. Accordingly, the Department is exercising its authority to waive 42 U.S.C. 1437d(s); 42 U.S.C. 13661(a), (b), and (c); and 24 CFR 982.552 and 982.553 in regard to denial of admission, with the exception of § 982.553(a)(2)(i), which requires denial of admission to certain registered sex offenders.

When adding a family member after the HUD–VASH family has been admitted to the program, the rules of § 982.551(h)(2) apply. Other than the birth, adoption, or court-awarded custody of a child, the PHA must approve additional family members and

may apply its regular screening criteria in doing so.

In regard to verifying Social Security numbers (SSNs) for homeless veterans and their family members, an original document issued by a federal or state government agency, which contains the name of the individual and the SSN of the individual along with other identifying information of the individual, is acceptable in accordance with 24 CFR part 5.216(g). In the case of the homeless veteran, the PHA must accept the *Certificate of Release or Discharge from Active Duty* (DD–214) or the VA-verified *Application for Health Benefits* (10–10EZ) as verification of SSN and cannot require the veteran to provide a SSN card. These documents must also be accepted for proof-of-age purposes in lieu of birth certificates or other PHA-required documentation. Please note that veterans are also issued photo identification cards by the VA. If such identification is required by the PHA, these cards must be accepted by the PHA in lieu of another type of government-issued photo identification. These cards may also be used to verify SSNs and date of birth.

Civil rights requirements cannot be waived. The HUD–VASH program is administered in accordance with applicable Fair Housing requirements. These include applicable authorities under 24 CFR 5.105(a) and 24 CFR 982.53 including, but not limited to, the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title VI of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination Act. These requirements prohibit discrimination on the basis of race, color, religion, sex, familial status, national origin, age, or disability.

When HUD–VASH recipients include veterans with disabilities or family members with disabilities, HUD's reasonable accommodation standards requirements apply. These standards require PHAs to make a reasonable adjustment to rules, policies, practices, and procedures when it may be necessary in order to enable an applicant or resident with a disability to have an equal opportunity to use and enjoy a dwelling, the common areas of a dwelling, or participate in or access a recipient's programs and activities. These standards extends to various aspects of program implementation, including, for example, denial or termination of assistance, initial search term of the HCV, initial lease term, and informal reviews and hearings.

## b. Termination of Assistance

HUD has not established any alternative requirements for termination of assistance for HUD–VASH participants. However, prior to terminating HUD–VASH participants, HUD strongly encourages PHAs to exercise their discretion under 24 CFR 982.552(c)(2) and consider all relevant circumstances of the specific case, including granting reasonable accommodations for persons with disabilities in accordance with 24 CFR part 8, as well as including the role of the case manager and the impact that ongoing case management services can have on mitigating the conditions that led to the potential termination, prior to determining whether to terminate assistance. In addition, a HUD–VASH participant family must not be terminated after admission, for a circumstance or activity that occurred before admission and was known to the PHA, but could not be considered at the time of admission due to the HUD–VASH Operating Requirements. The PHA can terminate the family's assistance only for program violations that occur after the family's admission to the voucher program.

## c. Income Eligibility

The PHA must determine income eligibility for HUD–VASH families in accordance with 24 CFR 982.201. Income-targeting requirements of section 16(b) of the 1937 Act, as well as 24 CFR 982.201(b)(2), do not apply for HUD–VASH families so that participating PHAs can effectively serve the eligible population specified in the various appropriations acts; that is, homeless veterans, who may be at a variety of income levels, including low-income. The PHA may, however, choose to include the admission of extremely low-income HUD–VASH families in its income targeting numbers for the fiscal year in which these families are admitted. In conformance with normal program rules, PHAs may not deny admission to a family with zero income and must consider hardship circumstances before charging a minimum rent in accordance with 24 CFR 5.630(b).

## d. Initial Term of the HCV

Recognizing the challenges that HUD–VASH participants may face with their housing search, HUD–VASH vouchers must have an initial search term of at least 120 days. Therefore, § 982.303(a), which states that the initial search term must be at least 60 days, shall not apply, since the initial term must be at least 120 days. Any extensions, suspensions,

and progress reports will remain under the policies in the PHA's administrative plan, but will apply after the minimum 120-day initial search term.

## e. Initial Lease Term

Under the HCV program, voucher participants must enter into an initial lease with the owner for one year, unless a shorter term would improve housing opportunities for the tenant and the shorter term is a prevailing market practice. To provide a greater range of housing opportunities for HUD–VASH voucher holders, initial leases may be less than 12 months; therefore, both section 8(o)(7)(A) of the 1937 Act (42 U.S.C. 1437f(o)(7)(A)) and 24 CFR 982.309(a)(2)(ii) are waived.

## f. Ineligible Families

HUD–VASH families will be permitted to live on the grounds of a VA facility in units developed to house homeless veterans. Therefore, 24 CFR 982.352(a)(5), which prohibits units on the physical grounds of a medical, mental, or similar public or private institution, is waived for that purpose only.

## g. Mobility and Portability of HUD–VASH Vouchers

An eligible family that is issued a HUD–VASH voucher must receive case management services provided by the partnering VAMC or CBOC. Therefore, special mobility and portability procedures must be established. HUD–VASH participant families may reside only in those jurisdictional areas that are accessible to case management services as determined by VA HUD–VASH case managers at the partnering VAMC or CBOC. Since the case managers will be identifying homeless veterans eligible to participate in the HUD–VASH program, section 8(r)(1)(B)(i) of the 1937 Act (42 U.S.C. 1437f(r)(1(B)(i)), which restricts portability in cases where the family did not reside in the jurisdiction of the PHA at the time of application for HCV assistance, and 24 CFR 982.353(a), (b), and (c), which affects where a family can lease a unit with HCV assistance, do not apply. HUD may publish public housing notices from time to time to further explain portability requirements under the HUD–VASH program.

## 1. Portability Moves Within Same Catchment Area (or Area of Operation) Where Case Management Is Provided by the Initial PHA's Partnering VAMC or CBOC

If the family initially leases up, or moves, under portability provisions, but the initial PHA's partnering VAMC or

CBOC will still be able to provide the necessary case management services due to the family's proximity to the partnering VAMC or CBOC, the receiving PHA must process the move in accordance with the portability procedures of 24 CFR 982.355. However, since the initial PHA must maintain records on all HUD–VASH families receiving case management services from its partnering VAMC or CBOC, receiving PHAs without a HUD–VASH program must bill the initial PHA. Therefore, 24 CFR 982.355(d), which gives the receiving PHA the option to absorb the family into its own HCV program or bill the initial PHA, is not applicable.

## 2. Portability Moves Within Same Catchment Area Where Both PHAs Have Received HUD–VASH Vouchers

The receiving PHA may bill the initial PHA or absorb the family into its own HUD–VASH program if the VAMC or CBOC providing the initial case management agrees to the absorption by the receiving PHA and the transfer of case management. The absorption will also entail the availability of a HUD–VASH voucher and case management provision by the receiving PHA's partnering VAMC or CBOC.

## 3. Portability Moves Where Receiving PHA Is Beyond Catchment Area

If a family wants to move to another jurisdiction where it will not be possible for the initial PHA's partnering VAMC or CBOC to provide case management services, the VAMC must first determine that the HUD–VASH family could be served by another VAMC or CBOC that is participating in this program, and the receiving PHA must have a HUD–VASH voucher available for this family. In these cases, the families must be absorbed by the receiving PHA either as a new admission (upon initial participation in the HUD–VASH program) or as a portability move-in (after an initial leasing in the initial PHA's jurisdiction). Upon absorption, the initial PHA's HUD–VASH voucher will be available to lease to a new HUD–VASH-eligible family, as determined by the partnering VAMC or CBOC, and the absorbed family will count toward the number of HUD–VASH slots awarded to the receiving PHA.

When the receiving PHA completes the form HUD-50058 under the scenarios above, the action type that must be recorded on line 2a is "1" for a new admission (a family that is new to the HCV program) or "4" for a portability move-in (a family that was previously leased up in the jurisdiction of the initial PHA). Whether the family



**DEPARTMENT OF VETERANS AFFAIRS**
**VA Connecticut Healthcare System**
**950 Campbell Avenue**
**West Haven, CT 06516**

In Reply Refer To: 00/689

June 13, 2023

Address

Dear Mr. Rose:

Pursuant to our conversations, most recently on June 5th, 2023, I have consulted with VA's Office of General Counsel to provide interpretation of the documentation you submitted. Your statements indicate that you believe you are entitled to HUD VASH housing vouchers due to your living situation, which you have defined as homeless, and that income is not considered part of the criteria for voucher candidacy.

The HUD VASH program is a collaboration between Veterans' Affairs (VA) and the Department of Housing and Urban Development (HUD). The program's regulations provide that HUD has the ultimate authority over governance and issuance of housing vouchers. Based on previous discussions, it is our current understanding that you reside in a border/rooming house. This does not meet HUD's definition of homelessness.

Regarding income, you have referenced VA's own website as indicating that there is no VA income limit for eligibility. However, it is HUD, and its local Housing Authority, that approves the application for the housing voucher. In doing so, the Housing Authority makes the determination for Section 8 housing eligibility, which **is** dependent on a Veteran's income.

I understand that your housing situation may change. In the event that it does, it is possible to re-evaluate your candidacy for the HUD VASH program at that time.

Again, I encourage you to discuss **all** options with your Primary Care Social Worker. They can provide consultation and advocacy on your behalf as well as refer you to legal services should you have legal questions.

Sincerely,

D Cause of Action

The VA explanation for denying me benefits goes many ways we start off with their first explanation.

*The HUD VASH program is a collaboration between Veterans' Affairs (VA) and the Department of Housing and Urban Development (HUD). The program's regulations provide that HUD has the homelessness.ultimate authority over governance and issuance of housing vouchers. Based on previous discussions, it is our current understanding that you reside in a border/rooming house. This does not meet HUD's definition of*

Now lets see what the regulation states. I will put the link below.

Federal Register :: Section 8 Housing Choice Vouchers: Revised Implementation of the HUD-Veterans Affairs Supportive Housing Program

*HUD-Veterans Affairs Supportive Housing (HUD-VASH) program administered by local public housing agencies (PHAs) that have partnered with local Veterans Affairs (VA) medical facilities or other entities as designated by the Secretary of the Department of Veteran Affairs*

The regulation states that the VA is ultimately responsible for the program at the very beginning. Now if we look to the second part of the statement where they address my homelessness. What is a boarding house? I used a legal dictionary for this one the link is below.

 BOARDING-HOUSE Definition & Meaning - Black's Law Dictionary (thelawdictionary.org)

*A boarding-house is not in common parlance, or in legal meaning, every private house where one or more boarders are kept occasionally only and upon special considerations. But it is a quasi public house, where boarders are generally and habitually kept, and which is held out and known as a place of entertainment of that kind. Cady v. McDowell, 1 Laus. (N. Y.) 486. A boarding-house is not an inn, the distinction being that a boarder is received into a house by a voluntary contract, whereas an innkeeper, in the absence of any reasonable or lawful excuse, is bound to receive a guest when he presents himself. 2 El. & Bl. 144. The distinction between a boarding-house and an inn is that in a boarding-house the guest is under an express contract, at a certain rate for a certain period of time, while in an inn there is no express agreement; the guest, being on his way, is entertained from day to day, according to his business, upon an implied contract. Willard v. Steinhardt, 2 E. D. Smith (N. Y.) 148.*

The VA is supposed to use Homeless per McKinney Vento definition.  See link below.

HAAA_HEARTH.PDF (hud.gov)

*3) an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing*

I didn't think I had to get the legal definition of a boarding house to show that it was transitional/temporary housing.  These people house homeless in hotels which is an inn which a boarding house is akin to only difference is the contract.

The next part of their response states.

*Regarding income, you have referenced VA's own website as indicating that there is no VA income limit for eligibility. However, it is HUD, and its local Housing Authority, that approves the application for the housing voucher. In doing so, the Housing Authority makes the determination for Section 8 housing eligibility, which is dependent on a Veteran's income.*

It looks like they are trying to pass the ball and say no the VA is good its HUD that's blocking.  How can HUD do that? The VA is responsible for their own allocation of vouchers.  Per their regulations.

Federal Register :: Section 8 Housing Choice Vouchers: Revised Implementation of the HUD-Veterans Affairs Supportive Housing Program

*The PHA must determine income eligibility for HUD-VASH families in accordance with 24 CFR 982.201. Income targeting requirements of section 16(b) of the USHA of 1937, as well as 24 CFR 982.201(b)(2), do not apply for HUD-VASH families so that participating PHAs can effectively serve the eligible population specified in the Appropriations Acts; that is, homeless veterans, who may be at a variety of income levels, including low-income. The PHA may, however, choose to include the admission of extremely low-income HUD-VASH families in its income targeting numbers for the fiscal year in which these families are admitted. In conformance with normal program rules, PHAs may not deny admission to a family with zero income and must consider hardship circumstances before charging a minimum rent in accordance with 24 CFR 5.630(b).*

So it clearly states: Income targeting requirements of section 16(b) of the USHA of 1937, as well as 24 CFR 982.201(b)(2), do not apply for HUD-VASH families so that participating PHAs can effectively serve the eligible population specified in the Appropriations Acts; that is, homeless veterans, who may be at a variety of income levels, including low-income

As I have previously said the VA has gone on a campaign of misinformation and whistle blower retaliation.  I am asking once again.  That someone please help us Veterans out of this terrible situation and punish the VA for their continued actions.  Thank you.

Aubrey Rose

(860)965-7354

Aubrey.rose1980@gmail.com

D  CAUSE  of  Action



**VA** | U.S. Department of Veterans Affairs
Office of General Counsel

Torts Law Group (021)
810 Vermont Avenue, N.W.
Washington, D.C. 20420

Telephone: (202) 461-4900
Fax: (202) 495-5076

In Reply Refer To: GCL 515971

**Certified Mail-7014 2120 0000 3511 4535**

June 15, 2023

Mr. Aubrey W. Rose
184 Adelaide St.
Hartford, CT 06114

Re: Administrative Tort Claim

Dear Mr. Rose:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding your administrative tort claim which was received on February 27, 2023.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed your claim, provides for monetary compensation when a Government employee, acting within the scope of employment, results in injury or damage to property of another by a negligent or wrongful act or omission.

Our review concluded that there was no evidence of any negligent or wrongful act on the part of a VA employee acting within the scope of his or her employment that caused you compensable harm regarding the U.S. Department of Housing and Urban Development – VA Supportive Housing (HUD-VASH) program. We note multiple instances when you were advised of the housing criteria set by HUD and VA, noting that you do not meet the applicable criteria. The allegations in your claim are neither cognizable nor compensable under the FTCA. Accordingly, we must deny your administrative tort claim.

We are required by law to inform you that if you are dissatisfied with the denial of the claim, you may file suit under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Mr. Aubrey W. Rose
GCL 515971
Page 2

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or lawsuit. VA attorneys handling FTCA claims work for the Federal government, and we cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Robert P. Kirchhoefer
Deputy Chief Counsel

D  CAUSE of Action

accordance with the actual cost of shelter and utilities, the amount of welfare assistance income to be included as income shall consist of:

(c)  The amount of the allowance or grant exclusive of the amount specifically designated for shelter or utilities; plus

(d)  The maximum amount that the welfare assistance agency could in fact allow the family for shelter and utilities. If the family's welfare assistance is ratably reduced from the standard of need by applying a percentage, the amount calculated under this paragraph shall be the amount resulting from one application of the percentage.

(7)  Periodic and determinable allowances, such as alimony and child support payments, and regular contributions or gifts received from organizations or from persons not residing in the dwelling; and

(8)  All regular pay, special pay, and allowances of a member of the Armed Forces, except as provided in paragraph (7) under Income Exclusions.

(9)  For Section 8 programs only and as provided in 24 CFR 5.612, any financial assistance, in excess of amounts received for tuition, that an individual receives under the Higher Education Act of 1965 (20 U.S.C. 1001 *et seq.)*, from private sources, or from an institution of higher education (as defined under the Higher Education Act of 1965 (20 U.S.C. 1002)), shall be considered income to that individual, except that financial assistance described in this paragraph is not considered annual income for persons over the age of 23 with dependent children. For purposes of this paragraph "financial assistance" does not include loan proceeds for the purpose of determining income. *(Note: This paragraph also does not apply to a student who is living with his/her parents who are applying for or receiving Section 8 assistance.)*

**INCOME EXCLUSIONS:**

(1)  Income from employment of children (including foster children) under the age of 18 years;

(2)  Payments received for the care of foster children or foster adults (usually persons with disabilities unrelated to the tenant family, who are unable to live alone);

(3)  Lump-sum additions to family assets, such as inheritances, insurance payments (including payments under health and accident insurance and worker's compensation), capital gains, and settlement for personal or property losses, except as provided in paragraph (5) under Income Inclusions;

(4)  Amounts received by the family that are specifically for, or in reimbursement of, the cost of medical expenses for any family member;

(5)  Income of a live-in aide, as defined in 24 CFR 5.403;

(6)  The full amount of student financial assistance paid directly to the student or to the educational institution (see Income Inclusions (9), above, for students receiving Section 8 assistance);

(7)  The special pay to a family member serving in the Armed Forces who is exposed to hostile fire (e.g., in the past, special pay included Operation Desert Storm);

(m) Earned income tax credit (EITC) refund payments received on or after January 1, 1991, for programs administered under the United States Housing Act of 1937, title V of the Housing Act of 1949, section 101 of the Housing and Urban Development Act of 1965, and sections 221(d)(3), 235, and 236 of the National Housing Act (26 U.S.C. 32[I]);

(n) Payments by the Indian Claims Commission to the Confederated Tribes and Bands of Yakima Indian Nation or the Apache Tribe of Mescalero Reservation (Pub. L. 95-433);

(o) Allowances, earnings, and payments to AmeriCorps participants under the National and Community Service Act of 1990 (42 U.S.C. 12637[d]);

(p) Any allowance paid under the provisions of 38 U.S.C. 1833(c) to children of Vietnam veterans born with spina bifida (38 U.S.C. 1802-05) children of women Vietnam veterans born with certain birth defects (38 U.S.C. 1821), and children of certain Korean service veterans born with spina bifida (38 U.S.C. 1821);

(q) Any amount of crime victim compensation (under the Victims of Crime Act) received through crime victim assistance (or payment or reimbursement of the cost of such assistance) as determined under the Victims of Crime Act because of the commission of a crime against the applicant under the Victims of Crime Act (42 U.S.C. 10602);

(r) Allowances, earnings and payments to individuals participating in programs under the Workforce Investment Act of 1998 (29 U.S.C. 2931(a)(2));

(s) Any amount received under the Richard B. Russell School Lunch Act (42 U.S.C. 1780(e)) and the Child Nutrition Act of 1966 (42 U.S.C. 1780(b)), including reduced-price lunches and food under the Special Supplemental Food Program for Women, Infants, and Children (WIC);

(t) Payments, funds, or distributions authorized, established, or directed by the Seneca Nation Settlement Act of 1990(25 U.S.C. 1774f(b));

(u) Deferred amounts from Department of Veterans Affairs disability benefits that are received in a lump sum amount or in prospective monthly amounts (42 U.S.C.§ 1437a(b)(4));

(v) Compensation received by or on behalf of a veteran for service-connected disability, death, dependency, or indemnity compensation as provided by an amendment by the Indian Veterans Housing Opportunity Act of 2010 (Pub. L. 111-269; 25 U.S.C. 4103(9)) to the definition of income applicable to programs authorized under the Native American Housing Assistance and Self-Determination Act (NAHASDA) (25 U.S.C. 4101 *et seq.*) and administered by the Office of Native American Programs;

(w) A lump sum or a periodic payment received by an individual Indian pursuant to the Class Action Settlement Agreement in the case entitled Elouise Cobell et al. v. Ken Salazar et al., 816 F.Supp.2d 10 (Oct 5, 2011 D.D.C.), for a period of one year from the time of receipt of that payment as provided in the Claims Resolution Act of 2010 (Pub. L. 111-291);

(x) Any amounts in an "individual development account" as provided by the Assets for Independence Act, as amended in 2002 (Pub. L. 107-110, 42 U.S.C. 604(h)(4));

(y) Per capita payments made from the proceeds of Indian Tribal Trust Cases as described in PIH Notice 2013-30 "Exclusion from Income of Payments under Recent Tribal Trust

# HUD-VASH Reference Guide – Rules waived for the program (based on flexibility provided by Congress in annual appropriations acts)

| Topic | Regulation/Legislation | Explanation of Regulation/Authorization | HUD-VASH Requirement |
|---|---|---|---|
| **Eligibility** | Section 8(o)(19) of USHA of 1937 | A provision of this statute requires that homeless Veterans have a chronic mental illness or chronic substance use disorder and that such disorders be treated as a condition of receipt of HUD-VASH voucher. | HUD-VASH participants are not required to have or be treated for chronic mental illnesses or chronic substance abuse disorders. |
| **Waiting Lists** | Section 8(o)(6)(A) of USHA of 1937, U.S.C. 1437f(o)(6)(A) | Authorizes PHAs to establish preferences for their waiting list based upon local need and priorities. | PHAs do not have the authority to maintain a waiting list or apply local preferences for HUD-VASH vouchers. |
| | 24 CFR 982.202 through 982.206 | Covers selection of applicants, special admissions, waiting list administration, cross-listing, and opening/closing of waiting lists. | PHAs do not have the authority to maintain a waiting list or apply local preferences for HUD-VASH vouchers. |
| **Preferences** | 24 CFR 982.207 | Covers local preferences. | PHAs do not have the authority to maintain a waiting list or apply local preferences for HUD-VASH vouchers. |
| **Screening of Applicants** | 24 CFR 982.552 and 24 CFR 982.553 | PHAs have the authority to screen potentially eligible families and deny assistance on permitted grounds. 982.552 covers broad denial for violations of HCV program requirements and 982.553 covers specific denials for criminal and alcohol abusers. | PHAs do not have authority to determine family eligibility in accordance with HCV program rules and PHA policies. The VAMC will screen families in accordance with its screening criteria and federal nondiscrimination laws. One exception is that 982.553(a)(2)(i) is not waived & requires denial of admission to certain registered sex offenders. Also, when new family members are added after the Veteran is a participant, 24 CFR 982.551(h)(2) and regular PHA screening criteria apply. |
| **Income Targeting** | 24 CFR 982.201(b)(2) and income targeting requirements of Section 16(b) of USHA of 1937 | Specifies income-targeting requirements for PHAs: no less than 75% of families admitted to the voucher program must be extremely low-income families. | To ensure that PHAs can effectively serve the eligible population specified in the Conference Report accompanying the 2008 Appropriations Act, homeless Veterans at a range of income levels, income-targeting requirements do not apply for HUD-VASH. |
| **Initial Search Term** | 24 CFR 982.303(a) | Sets an initial search term of at least 60 calendar days for participants to locate housing using their voucher. | In recognition of the potential challenges associated with locating appropriate housing, the initial search term for HUD-VASH participants must be at least 120 days. Any extensions, suspensions, and progress reports will remain under the policies in PHA's admin plan but will apply after the 120-day initial search term. |
| **Length of Lease** | Section 8(o)(7)(A) of the USHA of 1937, 42 USC 1437(f)(o)(7)(A), and 24 CFR 982.309(a)(2)(ii) | Requires that the initial lease with the owner be for 1 year unless a shorter term would improve housing opportunities for the tenant and the shorter term is a prevailing market practice. | Initial lease terms may be less than 1 year in order to provide a greater range of housing opportunities for HUD-VASH voucher holders. |
| **Location of Units** | 24 CFR 982.352(a)(5) | Prohibits the use of vouchers for units on the grounds of medical, mental, or similar public or private institutions | HUD-VASH families are permitted to live on the grounds of a VAMC in units developed to house homeless Veterans. |
| **Mobility & Portability** | 24 CFR 982.353(a), (b), and (c) | Covers where the family can lease a unit with HCV assistance. Stipulates that applicant families are allowed to move under portability upon voucher issuance, prior to being officially admitted into the program. PHAs may restrict portability if neither the household head nor spouse of an applicant family were legal residents in the jurisdiction of the initial PHA when they applied. | PHAs must follow special mobility and portability procedures for HUD-VASH. All Veteran families still have the right to move under portability, as long as partnering VAMC(s) approve and can continue to provide case management, if it's still needed by the Veteran. Families issued a HUD-VASH voucher that were not legal residents when they applied must be allowed to move under portability. See Notice PIH 2011-53 for more information. |
| **Portability** | Section 8(l)(B)(i) of the USHA of 1937; 42 U.S.C. 1437 f(r)(l)(B)(i) | Restricts portability in cases where the family did not reside in the jurisdiction of the PHA at the time of the HCV application | HUD-VASH PHAs have to follow special mobility and portability procedures. Families issued a HUD-VASH voucher that were not legal residents when they applied must be allowed to move under portability. |
| | 24 CFR 982.3559(d) | Provides the option for the receiving PHA to absorb the family into its own HCV program or to bill the initial PHA instead | HUD-VASH PHAs have to follow special mobility and portability procedures. See Notice PIH 2011-53 for more information. |
| **SEMAP** | 24 CFR 985.3(n)(l)(i) and (ii) | Covers procedures for verifying the lease-up indicator in SEMAP | Because the leasing of HUD-VASH vouchers will be dependent on referrals from the VAMC, the unit months and budget authority associated with these vouchers will not be included in the SEMAP leasing indicator denominator. However, utilization of these vouchers will be monitored separately through HUD systems. |

D cause of Action

# HUD-VASH Reference Guide - Requirements

Summary of requirements in PIH Notices and the Federal Register notice,
Revised Implementation of the HUD-VA Supportive Housing Program, published March 23, 2012.

| Topic | HUD-VASH Operating Requirements |
|---|---|
| **PHA Eligibility** | Eligible PHAs must be located within the jurisdiction of a VAMC and in an area of high need based up on data compiled by HUD and the VA. PHA administrative performance also is taken into consideration. |
| | When Congress funds a new allocation of HUD-VASH vouchers, HUD invites eligible PHAs to apply for a specified number of vouchers. Only those PHAs invited to apply receive HUD-VASH vouchers. |
| **Participant Eligibility** | Eligible families are homeless Veterans and their families that are referred to participating PHAs by the PHAs' partnering VAMCs or CBOCs. Before making referrals to PHAs, VA staff screen families according to the VA's screening criteria and in compliance with federal nondiscrimination and civil rights laws. *See* 24 CFR 5.105(a) and 24 CFR 982.53. |
| | DD-214 certificates and VA-verified Applications for Health Benefits must be accepted as verification of SSNs and birthdates. VA identification cards must be accepted as government-issued photo identification, and they can also verify SSNs and birthdates. |
| | PHAs screen only for income eligibility and lifetime registration under state sex offender registration programs.  However, when new family members are added after the Veteran is a participant, 24 CFR 982.551(h)(2) and regular PHA screening criteria apply. |
| | The income targeting requirement of 75% of families being extremely low-income does not apply to HUD-VASH. |
| **HQS Inspections** | PHAs may pre-inspect units that Veterans may be interested in leasing.  If a family selects a unit that passed a HQS inspection (without intervening occupancy) within 45 days of the date of the Request for Tenancy Approval, the unit may be approved. |
| **Leasing** | Families issued a HUD-VASH voucher have at least 120 days to search for a unit. |
| | Families issued a HUD-VASH voucher may move under portability, even if the family did not have legal residency in the jurisdiction of the initial PHA when they applied. |
| | HUD-VASH families may enter into an initial lease with an owner for less than 12 months. |
| | HUD-VASH families may live on the grounds of a VAMC in units owned by the VA. |
| **Case Management** | Veterans must agree to participate in case management in order to receive a HUD-VASH voucher. HUD-VASH assistance may be terminated if the family refuses, without good cause, to participate in required case management as verified by the VAMC |
| | A VAMC's determination that case management is no longer needed is not grounds for termination of HCV assistance.  In such cases, a family may be offered a regular voucher to free up the HUD-VASH voucher, or they may keep their HUD-VASH voucher. |
| **Portability - within** initial VAMC's catchment area | A HUD-VASH family can move within the VAMC's catchment area as long as case management can still be provided, as determined by the VA. The VA must always be consulted prior to a move to ensure that case management will continue to be provided. |
| | If the receiving PHA does not have a HUD-VASH program, they must bill the initial PHA. If the receiving PHA does have a HUD-VASH program, they may absorb the family or bill the initial PHA. |
| **Portability - outside** initial VAMC's catchment area | A HUD-VASH family can move if the referring VAMC confirms that the new VAMC has an available case management slot. |
| | The receiving PHA must have a HUD-VASH program and the HUD-VASH family must be absorbed. |
| **Portability - when** case management no longer required | If a HUD-VASH family wishes to move under portability and the Veteran no longer requires case management, they do not need to move to a community in which case management can be provided.  The receiving PHA does not need to be a HUD-VASH PHA, and they may choose to bill the initial PHA or absorb the Veteran with a regular voucher.  If they choose to bill the initial PHA, they must enter/maintain "VASH" on line 2n of form HUD-50058. |
| **Voucher Turnover** | Upon turnover, HUD-VASH vouchers must be issued to eligible Veteran families as identified by VAMCs. |
| **PBVs - see** Notice PIH 2011-50 | HUD will consider, on a case-by-case basis, requests from participating PHAs to project-base HUD-VASH vouchers. |
| | HUD has lifted the limit on the percent of a PHA's HUD-VASH allocation that could be project-based. However, HUD-VASH project-based units are still counted under the 20-percent budget authority limit, in accordance with 24 CFR 983.5(a). |
| **SEMAP** | HUD-VASH vouchers are excluded from the SEMAP leasing indicator. |
| **Moving to Work** | HUD-VASH vouchers must be administered in accordance with HUD-VASH notices and are not eligible for fungibility.  An MTW agency may submit a request to the Office of Public Housing and Voucher Programs to operate HUD-VASH vouchers in accordance with their MTW administrative flexibilities. The request will be approved if the flexibilities do not conflict with HUD-VASH requirements. |
| | HUD-VASH vouchers must be reported on separately from MTW vouchers using the regular form HUD-50058, unless an MTW agency requests and is granted a waiver by HUD headquarters. |
| Topic | HUD-VASH Reporting Requirements - See Notice PIH 2011-53 |
| **New PIC Code** | The code "VASH" has been established for use on line 2n of HUD-50058 to indicate that the family is a participant. The code must remain on the form throughout the family's participation in the program. |
| | PHAs must report issuance on HUD-50058 by entering VASH in field 2n and code 10 (issuance of voucher) in field 2a. |
| | If a HUD-VASH family no longer requires case management and the PHA has the funding and elects to serve them under its regular HCV program, the VASH code is no longer used on 2n.  If the PHA elects not to provide them with a regular voucher, the VASH code must continue to be used on 2n. |
| **PIC and Portability** | If the HUD-VASH family never leased up in the initial PHA's jurisdiction, the receiving PHA must enter code 1 (new admission) on line 2a. If the HUD-VASH family did lease up in the initial PHA's jurisdiction, the receiving PHA must enter code 4 (port-in) on 2a. |
| | The receiving PHA must submit a 50058 report in PIC for action code 10 (issuance of voucher) on line 2a.  Receiving PHAs that have not been awarded HUD-VASH vouchers must bill the initial PHA for tracking purposes. |
| | The code VASH must be entered and maintained on line 2n by both the initial and receiving PHA. |
| **VMS** | In VMS, the PHA should report all families that are supported by HAP funds under its own ACC, including those for which it is billed under portability. |
| | The UML and HAP of a HUD-VASH voucher that has ported out (for which the PHA is being billed) should be reported in the VASH field, not the port-out field. |

D  Cause of Action

**The McKinney-Vento Homeless Assistance Act**
**As amended by S. 896 The Homeless Emergency Assistance and Rapid Transition to**
**Housing (HEARTH) Act of 2009**

SEC. 103. [42 USC 11302].  GENERAL DEFINITION OF HOMELESS INDIVIDUAL.

(a) IN GENERAL.—For purposes of this Act, the term "homeless", "homeless individual", and "homeless person" means—

   (1) an individual or family who lacks a fixed, regular, and adequate nighttime residence;

   (2) an individual or family with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;

   (3) an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);

   (4) an individual who resided in a shelter or place not meant for human habitation and who is exiting an institution where he or she temporarily resided;

   (5) an individual or family who—

      (A) will imminently lose their housing, including housing they own, rent, or live in without paying rent, are sharing with others, and rooms in hotels or motels not paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, as evidenced by—

         (i) a court order resulting from an eviction action that notifies the individual or family that they must leave within 14 days;

         (ii) the individual or family having a primary nighttime residence that is a room in a hotel or motel and where they lack the resources necessary to reside there for more than 14 days; or

         (iii) credible evidence indicating that the owner or renter of the housing will not allow the individual or family to stay for more than 14 days, and any oral statement from an individual or family seeking homeless assistance that is found to be credible shall be considered credible evidence for purposes of this clause;

      (B) has no subsequent residence identified; and

      (C) lacks the resources or support networks needed to obtain other permanent housing; and

1



**DEPARTMENT OF VETERANS AFFAIRS**
**Orlando VA Healthcare System (OVAHCS)**
**13800 Veterans Way**
**Orlando, FL 32827**

In Reply Refer To:
Rose, Aubrey132-22

May 12, 2022

The Honorable Marco Rubio
Member, United States Senate
201 South Orange Ave, Suite 350
Orlando, FL 32801

Dear Senator Rubio,

This letter is in response to your recent inquiry regarding your constituent, Aubrey Wayne Rose of Kissimmee, FL and his care at the Orlando VA Healthcare System (OVAHCS) related to his experience in the Lake Nona Emergency Department and the Homeless Program. VA remains committed to honoring our Nation's Veterans by ensuring a safe environment to deliver exceptional health care. I would like to apologize for the difficulties experienced, as we strive to provide the highest quality service to all Veterans who seek our care.

On May 4, 2022, Ms. Rachelle Flamio, LCSW, Supervisory Social Work, Emergency Department, contacted Mr. Rose to address concerns. Ms. Flamio made attempts to explain the process of the Emergency Department mental health evaluation to ensure Veterans' safety. Ms. Flamio offered to work towards a collaborative resolution to restore his comfort in seeking future care in the Emergency Department, however, Mr. Rose declined further discussion.

On May 9, 2022, Ms. Jina Thalmann, LCSW Homeless Program Coordinator contacted Mr. Rose regarding his concerns related to the Homeless Program income thresholds. Ms. Thalmann provided information regarding Homeless Program income guidelines, however Mr. Rose declined further discussion. The Homeless Program will continue to provide support including alternative housing leads.

Thank you for your continuing interest in our nation's Veterans. Should Mr. Rose have additional questions regarding his care he may contact Ms. Flamio at 407-631-3309.

Sincerely,

Timothy J Cooke 108801
Digitally signed by Timothy J Cooke 108801
Date: 2022.05.12 14:19:33 -04'00'

Timothy J. Cooke
Medical Center Director/CEO



**DEPARTMENT OF VETERANS AFFAIRS**
**Office of the Chief of Staff**
**950 Campbell Avenue, West Haven, CT 06516**

Date: 6/8/2023

From: Huned Patwa, Chief of Staff (COS)
VA Connecticut Healthcare System (VACHS)

To: Aubrey Rose
184 Adelaide Street
Hartford, CT 06114-1806

Dear Mr. Rose,

VA Connecticut Health Care System is committed to providing you safe and appropriate health care.

Over the past several months you have engaged in disruptive behaviors while on site at the VA Hospital System. Disruptive behaviors undermine your safety and others' safety as well as healthcare delivery. Disruptive behaviors are not acceptable.

To continue to offer you appropriate health care, an Order of Behavioral Restriction has been applied to your healthcare services. The Order of Behavioral Restriction involves that you check in with the VA Police prior to all appointments and that you are escorted to meet with your health care providers.

If you wish to request a review of the Order of Behavioral Restriction, you have 30 days to do so by submitting a written request to the VA Connecticut Chief of Staff Office. The Chief of Staff Office shall forward the order and your request to the Network Director's Office for a final decision.

If you have additional questions or need assistance, you may contact Patient Advocacy Office at 203-932-5711, ext. 3300.

By your service to our nation, you have the right to be treated respectfully and compassionately. VA staff members, as well as patients, equally have the right to be treated in a safe environment that is respectful and courteous. We look forward to assisting you in meeting your health care goals.

Thank you for you service to our country,

Sincerely,

Huned Patwa
Chief of Staff
VA Connecticut Health Care System

D cause of Action

I have been issued an Order of Behavioral Restriction by Huned Patwa the Chief of Staff of VA CT. The reasoning behind that is that I was conducting disruptive behaviors. I did not engage in disruptive behaviors. What I did was protest legally and in doing so I was in complete compliance of anything that the VA Police asked of me. I had even received the Deputy Chief of Police Clears email and phone number so that at times he could mediate between me and the hospital staff.

My behavior is only deemed disruptive because it brings the hospital and the VA's crime to the forefront.

I would have no need to protest the VA if the VA did its job which is to facilitate all Veterans. The main issue that is causing this so called disruptive behavior is the fact that I found out that I was being denied access to HUDVASH due to income and because of my current homeless status which they want to insist is permanent housing. I have been protesting the VA because according to their own regulations HUDVASH is supposed to promptly provide me with the regulation and reasoning behind my denial to the program. I have been waiting months for this but it will never happen because that is an impossible task.

I Aubrey Rose due hereby request that a review of the Order of Behavioral Restriction and that I be provided the right to attend and provide the necessary evidence to support my claims.

Aubrey Rose

( 860)-965-7354

Aubrey.rose1980@gmail.com

Received : Bank hut
Barbose Carlet

Cause of Action



**ORDER OF BEHAVIORAL RESTRICTION**
**VISN DIRECTOR DECISION TO PATIENT FROM FACILITY CHIEF OF STAFF**
**Office of the Chief of Staff**
**950 Campbell Avenue, West Haven, CT 06516**

Date:  November 16, 2023

From:  Huned Patwa, Chief of Staff (COS)
       VA Connecticut Healthcare System (VACHS)

To:    Aubrey Rose
       184 Adelaide Street
       Hartford, CT 06114-1806

Dear Mr. Rose,

The VACHS Chief of Staff Office (COS) received your letter requesting a review of the Order of Behavioral Restriction (OBR) applied to your health care services.

The Chief of Staff forwarded your request for a review to the Veterans Integrated Service Network 1 (VISN 1) Director.

The VISN 1 Director decided to uphold the Order of Behavioral Restriction.

The VISN 1 Director's decision is final and is the highest level of review possible for an Order of Behavioral Restriction (38 CFR 17.107).

Your Order of Behavioral Restriction will be assessed again in two years at which time the Disruptive Behavior Committee (DBC) will recommend whether to modify, continue, or discontinue the Order of Behavioral Restriction (OBR).

The most effective way for you to influence future decisions about the Order of Behavioral Restriction (OBR) is to demonstrate that you are fully cooperative during future visits. This restriction does not reduce your eligibility for VA health care.

VACHS looks forward to assisting you in meeting your health care goals and providing you with care in a mutually respectful manner that is safe for everyone.

Thank you for you service to our country,

Sincerely,

Huned Patwa MD
Chief of Staff
VA Connecticut Health Care System